UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNIL SRINIVASAN, DDS,<br><br>    Plaintiff,<br><br>    v.<br><br>CONTINENTAL ASSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No. 18-cv-04371-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Docket Nos. 20, 23 |

    Plaintiff Sunil Srinivasan has filed suit against Defendants Continental Assurance Company and Trustmark Insurance Company (collectively, "Trustmark"). According to Dr. Srinivasan, he had a disability insurance policy with Trustmark, and Trustmark improperly denied a claim he made for disability benefits. The causes of actions pled by Dr. Srinivasan are breach of contract and breach of the implied duty of good faith and fair dealing. Currently pending before the Court are cross-motions for partial summary judgment/adjudication. The dispute is whether Trustmark has actually denied the claim for benefits. Dr. Srinivasan argues that Trustmark has denied the claim – more specifically, as of May 2, 2018, when it sent a letter to him. Trustmark argues that it has yet to make a final decision on his claim and that the May 2, 2018, letter was simply an update. Resolution of this issue will affect the course of the litigation.

    Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** Dr. Srinivasan's motion and **GRANTS** Trustmark's.

### I.     FACTUAL & PROCEDURAL BACKGROUND

    The undisputed evidence submitted by the parties in conjunction with the pending motions

reflects as follows.

Before he allegedly became disabled, Dr. Srinivasan was a self-employed endodontist. *See* Srinivasan Decl. ¶ 4. In May 1994, Dr. Srinivasan purchased a disability insurance policy from Trustmark.[1] *See* Srinivasan Decl. ¶ 2. Under the policy, Trustmark agreed to "pay the Total Disability Benefit during Your Total Disability." Swan Decl., Ex. 1 (Policy at 5). Trustmark also agreed to "pay a Residual Disability Benefit during Your Residual Disability equal to the Loss of Earnings Ratio multiplied by the Total Disability Benefit." Swan Decl., Ex. 1 (Policy at 5-6).

"Total Disability" and "Residual Disability" are both defined in the policy.

> "Total Disability" means that because of Injury or Sickness:
>
> (1) You cannot perform the substantial and material duties of Your regular occupation (After retirement, Your occupation will be considered to be the normal activities of a retired person of Your age); and
>
> (2) You are receiving care by a Physician which is appropriate for the condition causing Your Disability. You do not need to be under a Physician's care on a regular basis if You can show that further recovery is not expected.

Swan Decl., Ex. 1 (Policy at 4).

As for "Residual Disability," it "means that although You are gainfully employed at Your regular occupation, Your Loss of Earnings Ratio is 20% or more because of Injury or Sickness and You are receiving care by a Physician which is appropriate for the condition causing your Disability." Swan Decl., Ex. 1 (Policy at 5). "[I]n no event" does Trustmark pay the Residual Disability Benefit "beyond Age 65." Swan Decl., Ex. 1 (Policy at 6).

In 2015, Dr. Srinivasan began to experience pain, including back and leg pain. *See* Srinivasan Decl. ¶ 4. Dr. Srinivasan claims that, "as of October 5, 2017, [he] could no longer perform the material and substantial duties of [his] occupation." Srinivasan Decl. ¶ 4; *see also* Swan Decl., Ex. 2 (narrative attached to disability claim, stating that Dr. Srinivasan stopped working on October 5, 2017).

On November 16, 2017, Dr. Srinivasan submitted a disability claim to Trustmark. *See*

---

[1] It appears that, technically, Continental issued the disability policy but that Trustmark assumed liability for claims made under the policy. *See* Defs.' Opp'n at 3-4 & n.4.

2

Srinivasan Decl. ¶ 5; Swan Decl., Ex. 2 (claim). Trustmark acknowledged receipt of the claim several weeks later. *See* Srinivasan Decl. ¶ 6 & Ex. 2 (letter) (stating that "we have received the Disability Income Insurance Claim application" and that "[y]our claim has been assigned to Traci Talamini for handling") (emphasis omitted); Swan Decl. ¶ 4 (testifying that Trustmark received Dr. Srinivasan's initial disability benefits claim form on or about December 7, 2017).

Subsequently, from about December 21, 2017, through April 4, 2018, Trustmark sent several letters to Dr. Srinivasan regarding his claim. *See* Srinivasan Decl. ¶¶ 7-12 & Exs. 3-8 (letters).

- **Letter dated December 21, 2017.** In the letter, Trustmark stated, *inter alia*: "We are writing to update you regarding your claim" and "[w]e have opened your claim with the disability date of October 5, 2017." Srinivasan Decl., Ex. 3 (Letter at 1). Trustmark also asked Dr. Srinivasan to provide certain information, such as tax returns and medical information. *See* Srinivasan Decl., Ex. 13 (Letter at 1-2).
- **Letter dated January 19, 2018.** In the letter, Trustmark stated, *inter alia*: "We are writing to follow up our letter of December 21, 2017 regarding the status of your claim." Srinivasan Decl., Ex. 4 (Letter at 1).
- **Letter dated January 25, 2018.** In the letter, Trustmark stated, *inter alia*: "We received your letter dated January 14, 2018 and accompanying information in our office on January 19, 2018 and would like to take a moment to respond." Srinivasan Decl., Ex. 5 (Letter at 1). Trustmark also indicated that it was still waiting for Dr. Srinivasan to provide additional information. *See* Srinivasan Decl., Ex. 5 (Letter at 1).
- **Letter dated February 13, 2018.** In the letter, Trustmark stated, *inter alia*: "We are writing to follow up our last letter of January 25, 2018 regarding the status of your claim." Srinivasan Decl., Ex. 6 (Letter at 1). Trustmark indicated that it was still waiting for certain information. *See* Srinivasan Decl., Ex. 6 (Letter at 1).
- **Letter dated March 7, 2018.** In the letter, Trustmark stated, *inter alia*: "We are writing to follow up our telephone call yesterday regarding the status of your

3

claim." Srinivasan Decl., Ex. 7 (Letter at 1). Trustmark indicated that it was still waiting for certain information. *See* Srinivasan Decl., Ex. 7 (Letter at 1).

- **Letter dated April 4, 2018.** In the letter, Trustmark stated, *inter alia*: "We are writing to update you regarding the status of your claim. [¶] Currently, the medical consultant has completed his review of your claim.[2] At this time we feel your claim would be best handled on a personal basis" and thus, a Trustmark representative, Jon Cipro, would be in touch. Srinivasan Decl., Ex. 8 (Letter at 1).

On April 11, 2018, Dr. Srinivasan met with Mr. Cipro. Dr. Srinivasan recorded the conversation he had with Mr. Cipro (with Mr. Cipro's permission) and sent a copy of the recording to Trustmark. *See* Srinivasan Decl. ¶ 13 & Ex. 9 (transcript of recording). Excerpts from the conversation are provided below.

- Mr. Cipro informed Dr. Srinivasan that Trustmark had a medical consultant and that the consultant had "some difficulty seeing the changes between the two MRIs from objective documentation versus the subjective documentation." Srinivasan Decl., Ex. 9 (Tr. at 6). "[H]e felt that potentially you could still work at least as you were when you originally sold the practice and everything and then working on a part-time, after you cut back all your hours and things of that nature. He felt that you could still potentially do that, still work in at least a partial capacity so you'd be more, say, partially disabled versus totally disabled. So in other words, [he] felt that you could potentially, with proper rest and things of that nature, still work in some capacity. Therefore your claim could be considered under the residual provision of your policy which would mean you'd still be able to work on at least a limited basis." Srinivasan Decl., Ex. 9 (Tr. at 6-7).
- Mr. Cipro also noted that "you have another MRI coming up, you know, and as things change and new information comes in, that obviously could change the

---

[2] Apparently, in late March 2018, Trustmark made a referral to Dr. Clement K. Jones of Exam Coordinators Network for a medical review. *See* Swan Decl. ¶ 6 & Ex. 4 (referral to Dr. Jones). Dr. Jones, an orthopedic spine surgeon, provided his report on April 2, 2018, after reviewing the medical record for Dr. Srinivasan. *See* Swan Decl. ¶ 7 & Ex. 5 (report).

4

company's opinion or the way the company looks at the condition as well." Srinivasan Decl., Ex. 9 (Tr. at 7).

- Mr. Cipro further stated that, "[s]ometimes, what we do also is we try to work with an individual or whatever and come up with some form of alternative resolution that would take into consideration any potentially gray areas and concerns surrounding a claim. . . . Is that something that you may consider if appropriate at some point." Srinivasan Decl., Ex. 9 (Tr. at 7-8). Dr. Srinivasan responded: "Well, I'll wait until I get more information from you in writing." Srinivasan Decl., Ex. 9 (Tr. at 8). Mr. Cipro replied, *inter alia,* that "*as far as I know there's been no determination that's been made at this time.* I know there still may be a few more things, or a few more steps that probably have to be taken, but I just, wanted to let you know that given the review and things of that nature, they really unfortunately could not see the changes from one MRI to the next to the point where it would, support or document you could no longer work at all." Srinivasan Decl., Ex. 9 (Tr. at 8) (emphasis added). Dr. Srinivasan stated that he was "a little disappointed, but I'll, you know, I'll wait until I get more documentation." Srinivasan Decl., Ex. 9 (Tr. at 8). Mr. Cipro replied: "Written determination? Okay." Srinivasan Decl., Ex. 9 (Tr. at 9).
- Dr. Srinivasan asked, "[H]ow much longer is this going to take until you can make a final decision?" Srinivasan Decl., Ex. 9 (Tr. at 8). Mr. Cipro responded that "it just sometimes depends[;] if they feel that there is enough information that they currently have to make a determination, they'll go ahead and do so. *But they may feel that, there is a need to reach out to a doctor or something of that nature. So it's kind of hard to put a timeframe on it. I guess, to be up front, it depends on what else the company feels it needs to make its determination. Maybe it's just one of two more things that could be accomplished in a week or two, or maybe it's something, you know, that may take a little longer. I don't want to give you any false or misleading information on time frames*." Srinivasan Decl., Ex. 9 (Tr. at 8-

5

9) (emphasis added).

- Mr. Cipro concluded the conversation by stating as follows: "Okay, then what I'll do is I'll leave you my card and once I return to the office, I will touch base with Traci [the claims examiner] and probably Mr. Swan [her supervisor], and see, what *they feel the next steps are*. And then have something presented to you in writing *then we can discuss further or I can provide you with a heads up and let you know what's going on and what to expect, and you know, we can obviously have some more communication in the future*." Srinivasan Decl., Ex. 9 (Tr. at 9-10) (emphasis added).

Mr. Cipro thereafter prepared an internal memo in which he noted, *inter alia*, that "[t]he *Insured did request the company's position in writing* before he could consider any next steps on his behalf." Srinivasan Decl., Ex. 10 (Memo at 4) (emphasis added).

Subsequently, Dr. Srinivasan received a letter from Trustmark, dated May 2, 2018. *See* Srinivasan Decl. ¶ 17 & Ex. 13 (letter). Dr. Srinivasan takes the position that, in this letter, Trustmark denied his claim for benefits – or, as explained below, at least his claim for Total Disability benefits as opposed to Residual Disability benefits – whereas Trustmark maintains that the letter was just the written update that Dr. Srinivasan had requested.

Trustmark began the May 2 letter with the following statement: "Thank you for the courtesies you extended to our representative, Mr. Jon Cipro. We are writing to update you regarding your claim." Srinivasan Decl., Ex. 13 (Letter at 1). Trustmark acknowledged that Dr. Srinivasan had provided information to it as part of the claim handling process. *See* Srinivasan Decl., Ex. 13 (Letter at 1-2). Trustmark then noted that "[w]e had an independent Orthopedic Spine Surgeon review your claim" and he provided his opinion that Dr. Srinivasan did not have certain limitations. Srinivasan Decl., Ex. 13 (Letter at 2). Trustmark continued:

> *At this time the information on hand* does not support a claim for Total Disability under your policy. *Prior to a final review, we request that you submit any additional medical information in support of your claim*. Please be sure to include any recent MRI reports and actual studies. *Any information you wish to submit[] should be remitted within 30 days of this letter*.

6

Srinivasan Decl., Ex. 13 (Letter at 2) (emphasis added).

Trustmark concluded its letter by advising – for the first time in any of its communications with Dr. Srinivasan – that

> the Policy concerns the following provision setting forth the Time Limit for Filing Legal Action:
>
>> The policy under which you are insured for this claim has a provision that states, in part, that no legal action can be brought after three years from the time that proof of loss is required.
>
> *You also have the right to request a review by the California Department of Insurance.* Section 2695.7(b)(3) of the California Unfair Claims Settlement Practices Regulations requires that our company advised you that *if you believe your claim has been wrongfully denied or rejected*, you may have the matter reviewed by the California Department of Insurance at [the following address].

Srinivasan Decl., Ex. 13 (Letter at 2-3) (emphasis added).

Several weeks later, Dr. Srinivasan received another letter from Trustmark, this one dated May 31, 2018. *See* Srinivasan Decl. ¶ 19 & Ex. 14 (letter). In the letter, Trustmark stated: "*We are writing to update you regarding the status of your claim*" and "[w]e have yet to receive any additional medical information or communication from you in support of your claim. *If we do not receive any medical information or communication from you within the next 14 days, we will conduct a final review of your claim based on the information on hand at that time.*" Srinivasan Decl., Ex. 14 (Letter at 1) (emphasis added). Trustmark concluded its letter by containing the same advisement above. *See* Srinivasan Decl., Ex. 14 (Letter at 1) ("Please be advised that the Policy contains the following provision setting forth the Time Limit for Filing Legal Action . . . .").

The following day, June 1, 2018, an internal Trustmark record indicated that the claims examiner's plan of action was to proceed with an IME for Dr. Srinivasan. The examiner's supervisor, Robert Swan, approved this plan of action on June 11, 2018. *See* Swan Decl. ¶ 11 & Ex. 9 (internal record).

On June 8, 9, and 10, 2018, Frasco Investigative Services, a private investigating company

hired by Trustmark, conducted surveillance of Dr. Srinivasan to document his activities. *See* Swan Decl., Ex. 10 (report) (stating that the surveillance was "an attempt to document and video his activities, when feasible, given his complaint of an injury to his mid-back").

On June 13, 2018, at approximately 11:14 a.m., Trustmark sent to Exam Coordinators Network an email requesting an IME with Dr. Jones. *See* Swan Decl., Ex. 11 (email exchange).

On June 13, 2018, at 12:08 p.m. – about an hour after the email requesting an IME was sent – Dr. Srinivasan e-filed his complaint in state court. *See* Srinivasan Decl. ¶ 20; Docket No. 1 (summons and complaint). At the time, the complaint had not been served on Trustmark, and there was no evidence that Trustmark had notice of the suit.

On June 18, 2018, Frasco Investigative Services provided a report to Trustmark regarding the surveillance it had conducted of Dr. Srinivasan more than a week earlier on June 8, 9, and 10, 2018.

Two days later, on June 20, 2018, Dr. Srinivasan served a copy of the complaint on Trustmark. More specifically, personal service was effected on CT Corp., Trustmark's agent for service of process at 12:15 p.m.[3] *See* Horrow Decl., Ex. 28 (proof of service). CT Corp. informed Trustmark of the lawsuit the following evening (8:31 p.m.), *i.e.*, on June 21, 2018. *See* Mathai Decl. ¶ 3.

Before receiving the email from CT Corp. on June 21, 2018, Trustmark sent a letter on June 20, 2018, to Dr. Srinivasan. In the letter, Trustmark stated: "We are writing to advise you of the current status of your claim. [¶] Trustmark has not received any additional medical or other information from you in support of your claim. *Prior to a final review of your claim*, we will be arranging for an Independent Medical Examination (IME)." Srinivasan Decl., Ex. 15 (Letter at 1) (emphasis added). Trustmark indicated that Exam Coordinators Network would be contacting Dr. Srinivasan about the IME. Trustmark concluded its letter by containing the same advisement above. *See* Srinivasan Decl., Ex. 15 (Letter at 1) ("Please be advised that the Policy contains the following provision setting forth the Time Limit for Filing Legal Action . . . ."). As indicated

---

[3] Continental Assurance Company was technically served a few days later, on June 22, 2018. *See* Horrow Decl., Ex. 29 (proof of service).

8

1 above, although Trustmark did not send the letter to Dr. Srinivasan until June 20, 2018, its efforts
2 to obtain an IME began at least a week earlier.

## II. DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Where a plaintiff moves for summary judgment on claims that it has brought (*i.e.*, for which it has the burden of proof), it "must prove each element essential of the claims . . . by undisputed facts." *Cabo Distrib. Co. v. Brady*, 821 F. Supp. 601, 607 (N.D. Cal. 1992).

In contrast, where a defendant moves for summary judgment on claims for which the plaintiff has the burden of proof, the defendant may prevail simply by pointing to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

B. Evidence of Record

In his motion for summary judgment, Dr. Srinivasan contends a reasonable jury could only find that Trustmark issued a final denial of his disability claim. Trustmark, in its motion for summary judgment, contends a reasonable jury could not find that Trustmark had finally denied Dr. Srinivasan's disability claim. The Court focuses on Trustmark's motion first. If it finds in favor of Trustmark on its motion for summary judgment, then Dr. Srinivasan's motion is rendered moot.

The undisputed facts in the record weigh heavily in favor of Trustmark's motion such that

no reasonable jury could find that Trustmark had issued a final denial on Dr. Srinivasan's disability claim. Dr. Srinivasan relies heavily on Trustmark's letter of May 2, 2018, claiming it constituted an unequivocal denial. But the letter, on its face, patently establishes otherwise. The letter states:

> At this time the information on hand does not support a claim for Total Disability under your policy. *Prior to a final review*, we request that you submit any additional medical information in support of your claim. Please be sure to include any recent MRI reports and actual studies. Any information you wish to submit[] should be remitted within 30 days of this letter.

Srinivasan Decl., Ex. 13 (Letter at 2) (emphasis added). The letter expressly states that "final review" was still pending – and hence no final denial had taken place. That no final decision had been made was also explicit in the subsequent Trustmark letter of May 31, 2018 which stated: "If we do not receive any medical information or communication from you within the next 14 days, *we will conduct a final review of your claim* based on the information on hand at that time." Srinivasan Decl., Ex. 14 (Letter at 1) (emphasis added).

Not only did Trustmark explicitly communicate to Dr. Srinivasan that a final decision had *not* been made, Trustmark's own internal documents corroborate that fact. As indicated above, after the two May 2018 letters, Trustmark caused a private investigation company to surveil Dr. Srinivasan (on June 8, 9, and 20, 2018). In addition, Trustmark ordered an IME of Dr. Srinivasan. As Trustmark argues, it would make no sense to spend money in this way if Trustmark had in fact already denied the disability claim. And notably, both of these actions took place before Dr. Srinivasan ever e-filed his complaint in state court on June 13, 2018 and served notice on Trustmark.

In his papers, Dr. Srinivasan protests that Trustmark's May 2018 letters to him never made reference to the fact of the surveillance or the IME. But that fact is immaterial. The point is that Trustmark's internal actions corroborate what is plainly stated on the face of the May 2018 letters – *i.e.*, that a final review was still pending.

Left with this predicament, Dr. Srinivasan argues that the letter of May 2, 2018, must be construed as a denial – or at least could reasonably be construed as such, which would require

10

denial of Trustmark's motion – because it contains language required by the state of California when an insurer denies a claim. *See* Pl.'s Mot. at 13-14 (noting that "California insurance regulations require that an insurer's denial must meet specific requirements" – *e.g.*, "include a notice to the insured that, if the insured believes that the claim has been wrongfully denied, the insured may have the matter reviewed by the California Department of Insurance"). Dr. Srinivasan underscores that the many letters that Trustmark sent before the letter of May 2, 2018, never contained this language. In response, Trustmark argues that, while a letter of denial must contain the language, the inverse is not necessarily true – *i.e.*, that a letter that contains the language must be a denial. Trustmark asserts that it included the language in the May 2, 2018, letter simply out of an abundance of caution. *See* Swan Decl. ¶ 9 ("Because the letter advised Plaintiff of interim findings that, though not final, were not favorable to him, the letter also notified Plaintiff that he had the right to request a review by the California Department of Insurance, in an abundance of caution."). The inference Dr. Srinivasan seeks to draw from this cautionary language does not raise a genuine dispute of fact as to whether there was a final denial. The boilerplate language does not negate the clear and unequivocal language in the letter specifically stating a "final review" was still pending and the fact that Trustmark was proceeding with surveillance and an IME.

Dr. Srinivasan also makes a passing argument that there is a genuine dispute of fact (*i.e.*, as to whether there was a denial) because, even though he filed suit in July 2018, Trustmark did not immediately raise the defense of "no denial" and never expressly raised the defense until months later. If anything this amounts to a waiver agreement, not a merits claim. In any event, it is not enough to counter the overwhelming evidence in Trustmark's favor.

As a final attempt to save his case, Dr. Srinivasan makes a new argument in his opposition to Trustmark's motion – *i.e.*, notably, one that he could have made, but did not, in his own motion for summary judgment. More specifically, Dr. Srinivasan argues that, at the very least, Trustmark *partially* denied his disability claim: it denied his claim for Total Disability Benefits and left pending for review only his claim for Residual Disability Benefits. In support of this position, Dr. Srinivasan primarily relies on two pieces of evidence:

11

(1) Mr. Cipro's statement, during their meeting in April 2018 (*i.e.*, a few weeks before the May 2, 2018, letter issued), that Trustmark's medical consultant "felt that potentially you could still work at least as you were when you originally sold the practice and everything and then working on a part-time, after you cut back all our hours and things of that nature. He felt that you could still potentially do that, still work in at least a partial capacity so you'd be more, say, partially disabled versus totally disabled. So in other words, [he] felt that you could potentially, with proper rest and things of that nature, still work in some capacity. Therefore your claim could be considered under the *residual provision* of your policy which would mean you'd still be able to work on at least a limited basis." Srinivasan Decl., Ex. 9 (Tr. at 6-7) (emphasis added).

(2) The statement in the May 2, 2018, letter that "[a]t this time the information on hand does not support a claim for *Total Disability* under your policy." Srinivasan Decl., Ex. 13 (Letter at 2) (emphasis added).

Dr. Srinivasan emphasizes that, because the claim for Residual Disability Benefits was still undecided (unlike the claim for Total Disability Benefits), this explains why, after the May 2, 2018, letter, Trustmark engaged in surveillance of him and arranged for an IME.

Despite Dr. Srinivasan's belatedly raised argument, no reasonable jury could find that Trustmark actually denied the claim for Total Disability Benefits, while leaving open a claim for Residual Disability Benefits. First, Mr. Cipro's statement above is inconsequential because, in subsequent statements, he made clear that no decision had been reached *on anything*. And Dr. Srinivasan's own statements during the meeting reflected that he understood such. *See, e.g.*, Srinivasan Decl., Ex. 9 (Tr. at 8-9) (in response to Dr. Srinivasan's question, "[H]ow much longer is this going to take *until you can make a final decision*?," stating that "it depends on what else the company feels *it needs to make its determination*") (emphasis added). As for the May 2, 2018, letter, Dr. Srinivasan has ignored the sentence that follows the reference to Total Disability. The full and complete excerpt is as follows:

> *At this time the information on hand does not support a claim for Total Disability under your policy. Prior to a final review, we request that you submit any additional medical information in*

12

> *support of your claim.* Please be sure to include any recent MRI reports and actual studies. Any information you wish to submit[] should be remitted within 30 days of this letter.

Srinivasan Decl., Ex. 13 (Letter at 2) (emphasis added). The above makes clear that the claim for Total Disability is the claim that is subject to "final review." No mention is made of Residual Disability Benefits or any intent to bifurcate the denial between total and residual disability claims.

In fact, Dr. Srinivasan could not and did not make a claim for Residual Disability Benefits. He was not working at all and thus, per the terms of the policy, he would not have been eligible for Residual Disability Benefits. Under the policy, Residual Disability "means that *although You are gainfully employed at Your regular occupation*, Your Loss of Earnings Ratio is 20% or more because of Injury or Sickness and You are receiving care by a Physician which is appropriate for the condition causing your Disability." Swan Decl., Ex. 1 (Policy at 5) (emphasis added). In his application for benefits, Dr. Srinivasan stated that he had *stopped* working. *See* Swan Decl., Ex. 2 (narrative attached to disability claim, stating that Dr. Srinivasan stopped working on October 5, 2017). Attempting to overcome this problem, Dr. Srinivasan relies on the May 2, 2018, letter which cited the definitions of both Total Disability *and* Residual Disability. But the letter clearly states the pending final review was of the claim for Total Disability Benefits; no mention was made about the disposition of any claim for Residual Disability Benefits.

For the foregoing reasons, the Court concludes that no reasonable jury could find that Trustmark issued a final denial on Dr. Srinivasan's disability claim and therefore the Court grants Trustmark's motion for summary judgment. Because the Court is granting Trustmark's motion, Dr. Srinivasan's motion is moot.

C.  Request for Discovery

Dr. Srinivasan protests that, at the very least, the Court should defer ruling on Trustmark's motion so that he can conduct discovery which will support his opposition to the motion.

Federal Rule of Civil Procedure 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." Fed. R.

13

Civ. P. 56(d).

In the instant case, Dr. Srinivasan asks that he be allowed to take four depositions, plus propound certain written discovery. The four depositions are as follows:

(1) The deposition of Traci Talamani, the claims examiner.

(2) The deposition of Robert Swan, Ms. Talamani's supervisor. (He also engaged at one point with Dr. Srinivasan himself during the claims handling process, and he has provided declarations in support of Trustmark's position in the pending motions.)

(3) The deposition of John Cipro, who, as indicated above, had an in-person meeting with Dr. Srinivasan a few weeks before the May 2, 2018, letter issued.

(4) The 30(b)(6) deposition of Trustmark "regarding the training it provided to its employees on what to include in a letter denying a Trustmark disability insurance claim to a California insured in 2018." Horrow Decl. ¶ 23.

As for written discovery, Dr. Srinivasan asks for the following:

(1) Trustmark's Claims Manual and/or documents setting forth company policies or practices regarding handling, processing, and investigating claims.

(2) Documents related to training Trustmark claims handlers receive on what to include in a letter denying a claim.

(3) Documents that Trustmark produced in a different case in which Dr. Srinivasan's counsel was also counsel of record. Counsel claims that the documents are "directly relevant and probative to the issue being decided here [*i.e.*] whether the May 2, 2018 letter constitutes a denial" but that the documents are subject to a protective order in the other case and defense counsel will not allow for production here, even with another protective order. Horrow Decl. ¶ 26.

Dr. Srinivasan has failed to show why this discovery is necessary in order for him to oppose Trustmark's motion for summary judgment. The language of the May 2, 2018, letter is plain and unambiguous. Thus, the depositions of Ms. Talamani, Mr. Swan, and Mr. Cipro are unnecessary. Also, Trustmark does not dispute that California law requires certain language to be

14

included where an insurer issues a denial; its only point is that a letter containing such language does not automatically render the letter a denial. Furthermore, Trustmark has already produced to Dr. Srinivasan the claim file which includes the "short document [it uses to] identify[] any specific claims handling rules applicable to the state in question." Swan Reply Decl. ¶ 3 (also testifying that "Trustmark currently does not, and at all times during the disability claim that is the subject of this action did not, maintain or use a claims manual"). To the extent Dr. Srinivasan has suggested, in his opposition brief, that he also needs discovery on when exactly Trustmark learned of the lawsuit (*i.e.*, did it learn of the lawsuit before CT Corp. notified it), *see* Pl.'s Opp'n at 8 n.6, that is largely inconsequential information because there is no doubt that Trustmark was conducting surveillance of Dr. Srinivasan and preparing for his IME *before* the lawsuit was ever filed, let alone served.

### III. CONCLUSION

For the foregoing reasons, the Court grants Trustmark's motion for partial summary judgment and denies Dr. Srinivasan's motion.

Because the Court has now issued its ruling on the motions, the stay on discovery that the Court previously issued at the hearing on the motions is lifted. The parties are allowed to proceed with discovery, although discovery requests may need to be amended based on the Court's ruling herein.

This order disposes of Docket Nos. 20 and 23.

**IT IS SO ORDERED**.

Dated: January 4, 2019

_____
EDWARD M. CHEN
United States District Judge